## LEE HOWELL V. THE STATE.

No. 19192. Delivered November 24, 1937.
Rehearing Denied February 2, 1938.

The opinion states the case.

B. P. Maddox, of Tahoka, J. B. Engledow, of Thornton, and Glover Engledow, of Jayton, for appellant.

Lloyd W. Davidson, State's Attorney, of Austin, for the State.

GRAVES, JUDGE.—Conviction for theft; punishment, two years in the penitentiary.

This case comes before us without brief or bills of exceptions, and we are confined to passing upon the sufficiency of the evidence, which depends upon whether there is sufficient testimony to corroborate that of the witness J. R. Geurin who was an admitted accomplice. In order to fully understand this contention it will be necessary to recite rather fully the testimony relative thereto.

There is proof in the record that L. E. Bartlett lost three bales of cotton from the Hackberry gin yard on April 23, 1936, —such bales being numbered 909, 913 and 914,—under such circumstances as to constitute the crime of theft.

The witness Geurin in his testimony makes out a clear case of theft of such cotton, the principals in such crime being himself and appellant, Lee Howell. If the jury believed his testimony to be true, which it seems to have done, and that such testimony showed that the defendant was guilty of the offense charged, and that there was other testimony, outside that of the accomplice, tending to connect the appellant with the offense committed, a conclusion of appellant's guilt necessarily follows.

Mr. Marcus testified to having overheard a conversation between the appellant and the accomplice Geurin a short time prior to the date of the alleged theft in which appellant was supposed to have asked Geurin if he didn't want to make some money, and Geurin asked him how such could be made. Appellant answered: "Well, you are a farmer, aren't you?" Upon an affirmative answer appellant said: "Well, you can sell cot-

ton, can't you?" And Geurin replied: "I could if I had it to sell." Appellant replied: "Well, we will get some."

Mr. Dennis Ethridge and his wife who lived near Geurin's place saw a truck that looked like appellant's truck, with appellant in same, going down towards Geurin's place about 11 o'clock on the day of the theft, and saw the same truck come back with appellant and the accomplice in it about 1 o'clock in the afternoon going in the general direction of where the cotton was later taken. While Mr. Ethridge is not absolutely positive in his identification of the parties, his wife is clear and positive as to the occupants of the truck.

Mrs. J. R. Geurin, the wife of the accomplice, testified that the appellant came to their home on the 23rd of April, 1936, about 11 o'clock in the morning and went out in the field where her husband was working and had a talk with him. Then they came in and ate dinner, and went away towards Clairmont. The next time she saw them was on the night following the 23rd, after midnight; she was in bed. Appellant came in and washed his hands, and she testifies: "It looked to me like there was three or four bales of cotton in the truck, ginned cotton." Appellant was driving the truck at all the times she saw them together. To practically the same effect is the testimony of the witness Pauline Geurin.

It is also shown that from the cotton alleged to have been stolen there had been removed the original metal tags placed thereon, and other tags substituted therefor, which substituted tags had been stolen from a gin at Clairmont, and that he, appellant, had worked at such gin about the time or just prior to the time such tags had been taken. It was also shown that the accomplice did not possess a truck, but that on the next morning such accomplice was seen with appellant in appellant's black truck; he was later present in a similar truck in Snyder, and sold the cotton alleged to have been stolen. It was also shown that the truck of appellant had a certain kind of tire thereon, and that the tracks at the gin of the truck in which the cotton was carried therefrom corresponded to the kind of track made by the appellant's truck; it was also shown that the marks on the ground in the gin yard, where the cotton was stolen, evidenced the presence of two persons who had rolled these bales of cotton from their place in the yard to a further place not in view of the passers by on the public road, and that the identity of the cotton was established by certain numbers painted thereon in indelible ink. We thus find three stolen bales of cotton in the possession of the appellant and the accomplice (the accomplice

having no cotton just prior to his trip with appellant), and such bales of cotton being disposed of soon thereafter by the accomplice. It is true that at such disposal the testimony, outside that of the accomplice, does not place the appellant, but such cotton was in a truck belonging to the appellant, and in his possession around midnight the night before, and when sold was found in a similar, if not the same, truck, and we think the jury were justified from the evidence in assuming that it was the same truck in which the appellant and the accomplice had brought the cotton to the accomplice's home the night before.

It is our opinion that a sufficient amount of testimony has been exhibited tending to corroborate the testimony of the witness Geurin, showing that appellant was connected with the offense of the unlawful taking of this cotton, and the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Appellant files a motion for rehearing wherein he complains that the allegation and proof do not correspond relative to ownership and possession of the cotton alleged to have been stolen in this cause.

The indictment alleged the cotton to be in the possession of L. E. Bartlett and owned by him, and we quote from his testimony relative thereto:

"On the 23rd of April, 1936, I had thirty-five bales of cotton in the Hackberry Gin yard. I had the sole custody, control and actual management of the cotton that I have testified about on the 23rd of April, 1936. * * * I did not give my consent to this defendant or any other person to take that cotton. The cotton was stored here in Lynn County, Texas. I was the sole owner of the cotton and had the management, custody and control of the cotton at that time."

Appellant further contends that on account of the fact that Mr. Bartlett, the owner of the cotton, owed ginning charges on said cotton, the same was a lien against said cotton, and it was still at the gin and was in possession of the ginner. The only testimony relative to the ginning charges on said cotton comes from Mr. Bartlett, who testified as follows:

"I had not paid all of the ginning on this cotton on the 23rd of April, 1936. I couldn't say whether I had paid the ginning on these three bales of cotton at that time or not. I did owe some ginning to the gin. I left my bales of cotton down there

on the gin yard at the gin. They gave me some tickets to evidence my ownership of the cotton. I have my tickets at home. I never did sell my tickets."

We also quote from the testimony of Albert Basinger as follows:

"I live at Southland, Texas, and am in the gin business. I was in the gin business during the year of 1936. * * * I ginned some cotton out there for Mr. L. E. Bartlett. * * * Mr. Bartlett had some cotton there at the Hackberry gin yard, and had the right to go and get the cotton any time."

Appellant again complains of the lack of testimony to corroborate that of the accomplice Geurin tending to connect the appellant with the commission of this offense. We think this matter has been gone into fully in the original opinion herein. We can see no good reason for again going into the matter, but adhere to the expressions in the original opinion relative thereto.

There is nothing in the motion for rehearing that causes us to change our ideas relative to the matters herein raised, and the motion is therefore overruled.

*Overruled.*